JOHN V. BARRON & others *vs.* JOHN S. ELDREDGE & others.

The liability of a railroad company as common carriers for goods delivered to them attaches only when the duty of immediate transportation arises. So long as the shipment is delayed for further orders as to the destination of the goods or for the convenience of the owners, the liability of the company is that of warehousemen.

In an action against a railroad company for negligently storing the plaintiffs' flour and grain, there was evidence that the flour was burned in sheds and the grain in an elevator, both on the defendants' premises; that the sheds were of wood, and not slated; and that the shed where the fire first caught was from three to six feet from a railroad track along which a wood-burning engine, used about the premises as a shifting engine, had passed from twenty-five to thirty minutes before the fire was discovered; that the elevator was on a wharf two hundred or two hundred and fifty feet from the sheds, the intervening space being mostly covered by water; and that the fire took place in July, and the weather had been and was dry. *Held,* that there was evidence for the jury that the flour in the sheds was burned by the defendants' negligence, but no evidence that the grain in the elevator was burned by such negligence.

CONTRACT, with a count in tort, to recover of the defendants who were mortgagee trustees in possession of the Ogdensburg Railroad, the value of flour and grain, the property of the plaintiffs. In one count, the plaintiffs declared against the defendants as common carriers, and, in another, against them as warehousemen.

At the trial in this court, before *Hoar*, J., it appeared that the flour and grain were burned on July 28, 1864, while on the premises of the defendants at Ogdensburg, the flour being in sheds and the grain in an elevator; that the fire first broke out in the upper one of the cross sheds, so called, and from thence spread to the other sheds and to the elevator; and that the elevator was on a wharf from two hundred to two hundred and fifty feet from the sheds, the intervening space being mostly covered by water.

The plaintiffs put in evidence the correspondence between themselves and the defendants' agent at Ogdensburg, from December 1863 to August 1864, relative to the forwarding of the plaintiffs' flour and grain; and John V. Barron, one of the plaintiffs, gave evidence on the same subject. The plaintiffs contended that, at the time of the fire, the defendants were holding the grain and flour as common carriers, but the defendants contended that they were holding them as warehousemen only. No separate charge was made by the defendants for storage. This evidence is not reported, as no question of law arose on it.

To prove negligence on the part of the defendants, the plaintiffs called Dennis P. Gardner, who testified that he was employed on the premises of the defendants at Ogdensburg, and was there at the time of the fire; that the sheds were all built alike of wood, not slated, and with wooden foundations on the ground; that three cross sheds and two other sheds were burned; that the flour was in the latter; that when the witness first saw the fire, he was about twenty-five rods from it; that it was in the upper cross shed; that when he reached the fire he found nearly the whole length of the shed on fire, but could not tell in what part of the shed the fire originated; that it was mostly inside of the shed, but had broken through the roof; that the cross sheds had

remained in the same state for years; that there was no freight in them at the time of the fire, and the witness thought that the door of the upper shed was not locked; that, twenty-five minutes before seeing the fire, he had been putting men to work close to the shed where the fire broke out; that a wood-burning locomotive engine, used about the premises as a shifting engine, had passed over a track, pushing up cars to load, by the end of the upper cross shed, from three to six feet therefrom, and twenty-five minutes or half an hour before the fire broke out; that there was no watchman following or watching the engine before or at the time of the fire, that the witness knew of, but since the fire he had at times seen a watchman following the shifting engine; that it had been dry during the summer and at the time of the fire; and that there was not much wind, but a light breeze, which was in the direction to carry fire to the elevator. The fire was about three o'clock in the afternoon. A plan showed that the sheds were near each other.

The case was taken from the jury by consent, and reserved for the determination of the full court, to decide, on the evidence reported by the presiding judge, whether the defendants were shown to have had possession of the property as common carriers, and whether they were answerable on that ground. If the defendants were not liable as common carriers, judgment was to be rendered for them, unless the court should be of opinion that there was evidence upon which a jury could find that they were guilty of negligence as warehousemen; in which case that issue was to be submitted to a jury.

*J. G. Abbott & H. C. Hutchins*, for the plaintiffs.

*G. O. Shattuck & G. Putnam, Jr.*, for the defendants, to the point that there was no evidence of negligence, cited *Sheldon* v. *Hudson River Railroad Co.* 14 N. Y. 218, 224; *Burroughs* v. *Housatonic Railroad Co.* 15 Conn. 124; *Railroad Co.* v. *Yeiser*, 8 Penn. State, 366; *Rood* v. *New York & Erie Railroad Co.* 18 Barb. 80; *Fero* v. *Buffalo & State Line Railroad Co.* 22 N. Y. 209; *Field* v. *New York Central Railroad*, 32 N. Y. 339; *Tourtellot* v. *Rosebrook*, 11 Met. 460; *Hammack* v. *White*, 11 C. B. (N. S.) 588; *Cotton* v. *Wood*, 8 C B. (N. S.) 568; *Smith*

v. *Great Eastern Railway Co.* Law Rep. 2 C. P. 4 ; *Great Western Railway Co.* v. *Rimmer,* 6 C. B. (N. S.) (Am. ed.) 917, 923 *Shepherd* v. *Bristol Railway Co.* Law Rep. 3 Ex. 189 ; *Vaughan* v. *Taff Vale Railway Co.* 5 H. & N. 679 ; *Baltimore & Susquehanna Railroad Co.* v. *Woodruff,* 4 Maryl. 242; *McDonald* v. *Snelling,* 14 Allen, 290, 294 ; *Davidson* v. *Nichols,* 11 Allen, 514.

COLT, J. The responsibility of a common carrier, for goods intrusted to him, commences when there has been a complete delivery for the purpose of immediate transportation. If, without putting them in transit, the carrier, for his own temporary convenience, places them in store, still the liability of a carrier attaches. The delivery must be for immediate transportation, and, of course, it cannot be complete if anything remains to be done by the shipper before the goods can be sent on their way. If by the usage and course of business, and especially if by express request, the shipment is delayed for further orders as to their destination, or for the convenience of the owner, then, during the time of such delay, the liability is that of warehouseman. The more stringent liability of a common carrier only attaches when the duty of immediate transportation arises. It then shifts from that of warehouseman, although the goods remain unmoved in the storehouse. Whether the responsibility be in one capacity or the other is seldom a matter of express agreement between the parties. It arises out of the relation which the parties sustain, and the duties which the law imposes. These propositions are elementary, and need no extended citation of cases. Story on Bailm. § 535. 2 Redfield on Railw. (3d ed.) 46. *Judson* v. *Western Railroad Co.* 4 Allen, 520. Upon the evidence reported, which, by the consent of parties, is submitted to our decision, and applying the legal principles stated, we cannot find that the defendants are shown to have had possession of the property sued for, or any part of it, as common carriers, at the time of its loss. This is mainly a deduction of fact from all the evidence presented, and it would be unprofitable to state in detail the reasons which influence this result.

The plaintiffs' declaration, in addition to a count charging the defendants as common carriers, contains a count against the

defendants upon an undertaking safely to keep the goods in question until they could be transported, alleging that they did not safely keep them, and that, by reason of their carelessness and negligence, they were lost to the plaintiffs. It is conceded that the liability during this temporary detention is that of warehousemen. It is not necessary that there should be a separate charge for storage. The freight to be ultimately paid as compensation for the whole service, or the delivery for future transportation, furnishes a sufficient consideration for the promise to keep safely, and the defendants became bailees for hire. *Norway Plains Co.* v. *Boston & Maine Railroad,* 1 Gray, 263. They cannot be charged for the loss, if in the custody of the property they exercised ordinary care. What constitutes such care is a question of fact to be judged of with reference to all the circumstances of the case. The nature and value of the property, its exposure to damage or loss, its proximity to danger from fire, the means employed to prevent or arrest the progress of fire, the location, character, and construction of the storehouse in which it was placed, are elements to be considered. The question of ordinary care is to be settled also in reference to the degree of care which other persons, engaged in similar business, are in the habit of bestowing on property similarly situated. And generally the care and vigilance required is that which men of ordinary prudence in the same business usually bestow on property placed in their custody, and similarly situated in its exposure to loss. What constitutes negligence in these cases is a question peculiarly proper for the determination of the jury. And without intending to intimate, without, in fact, forming any opinion as to what the finding of a jury upon these facts ought to be, we are yet of the opinion that, in respect to the flour which was stored in the cross sheds, " there is evidence upon which a jury could find that the defendants were guilty of negligence as warehousemen."

The question of negligence is not confined in this form of action to the condition of the locomotive, as to safeguards, or the prudence with which it was driven past the defendants' storehouses. The cases cited by the defendants are mostly those

in which the common law liability of the railroad for property burned off the line, in fires caused by engines, was under discussion, and are not wholly applicable where the defendant sustains the relation of bailee, and his liability as such is sought to be enforced. It is indeed true that negligence cannot be inferred from the simple fact of causing the fire, for the reason that the use of fire to propel a railroad engine is lawful, and sparks and coals may escape notwithstanding all the safeguards which modern improvement has suggested. But it is matter of common knowledge, that combustible buildings or material, when near the track, in dry weather especially, are subjected to some degree of increased exposure to fire from passing wood-burning engines, although such engines are provided with ordinary safeguards, and are run with ordinary prudence. The cross sheds in this case were situated near the track. There is evidence that they were of wood, with wood foundations on the ground, and stood quite near each other. The weather had been dry previous to the fire, and the wind was in a direction to carry the fire from the engine toward the sheds. These circumstances, with others not necessary to allude to, should be submitted to the jury, with proper instructions upon the question whether the defendants were guilty of negligence in the capacity of warehousemen, in their custody of this portion of the property. Assuming that the burden of proof was upon the plaintiffs, under the allegations in their declaration, to show negligence, we think there was some evidence offered which had a tendency to sustain the burden. Story on Bailm. §§ 454, 529. *Cass* v. *Boston & Lowell Railroad Co.* 14 Allen, 448. *Lamb* v. *Western Railroad Co.* 7 Allen, 98.

It does not follow, if the jury should be satisfied, upon all the evidence, that the defendants did not exercise due and proper care in the custody of the flour in the sheds, that the defendants are therefore responsible for the loss of the grain which was deposited in the elevator, as a consequence of such negligence. The elevator was built upon a wharf extending into the St. Lawrence, at a distance of some two hundred or two hundred and fifty feet from the buildings which were burned on

shore, the intervening space being mostly covered with water. There is no suggestion that it was improperly constructed or insufficiently watched and guarded. The possibility of its destruction by fire, communicated from such a distance, was too remote, according to the usual experience of mankind, to justify a finding, solely upon the evidence afforded by its loss, that, in reference to the property contained in it, the defendants did not exercise due and ordinary care. And, in the opinion of the court, there is no evidence upon which the jury could find that the defendants were guilty of negligence in respect to the elevator and its contents. *McDonald* v. *Snelling*, 14 Allen, 290.

According to agreement of the parties, the case must stand for trial, on the question of the defendants' liability for the flour only.