# INTERSTATE COMMERCE COMMISSION *v.* DETROIT, GRAND HAVEN AND MILWAUKEE RAILWAY COMPANY.

### APPEAL FROM THE COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 539. Argued March 16, 1897. — Decided May 24, 1897.

A railroad engaged in interstate commerce does not violate the provisions of §§ 4 and 6 of the interstate commerce act, by furnishing cartage for delivery free of charge to the merchants of one town on its line, and not furnishing similar service to the merchants of another town on its line thirty-three miles distant, nor by failing to publish such free cartage in the schedule published in the first town, when such privilege has been openly and notoriously enjoyed for twenty-five years.

The fourth section of that act has in view only the transportation of passengers and property by rail, and when property transported as interstate commerce reaches its destination by rail at lawful rates, having regard to rates charged upon similar transportation to other points on the line, it does not concern the Interstate Commerce Commission whether the goods after arrival are carried to their place of deposit in vehicles furnished by the railway company free of charge, or in vehicles furnished by the owners of goods; and the same rule applies to the transportation of passengers.

In matters of this kind much should be left to the judgment of the Commission, and, should it direct, by a general order, that railway companies should thereafter regard cartage, when furnished free, as one of the terminal charges, and include it as such in their schedules, such an order might be regarded as a reasonable exercise of the Commission's powers.

THE Detroit, Grand Haven and Milwaukee Railway Company, a corporation of the State of Michigan, operates a railroad wholly within that State, running westwardly from Detroit to Grand Haven. In connection with eastern roads it is engaged in interstate commerce. Upon its line are the cities of Ionia and Grand Rapids, distant 124 and 157½ miles from Detroit respectively. It has an established tariff of freight rates to these points from New York, Philadelphia and other points east of Detroit.

On September 18, 1888, Stone & Carten, retail merchants at Ionia, filed a petition before the Interstate Commerce Com-

mission, complaining that said railroad company was unduly discriminating against Ionia and preferring Grand Rapids, in violation of certain provisions of the interstate commerce act. The company filed an answer, and the case was heard upon a written stipulation of facts, which constituted the sole evidence on which the case was submitted to the Commission for decision.

The facts found by the Commission were as follows:

" 1. The complainants are copartners, doing business under the firm name of Stone & Carten, and are engaged in the sale at retail of goods, wares and merchandise in the city of Ionia, county of Ionia, and State of Michigan, purchasing said goods, wares and merchandise at Philadelphia, Pa., New York, N. Y., Boston, Mass. and points east of Detroit, Michigan.

" 2. That the respondent railway company is a corporation existing under and pursuant to the laws of the State of Michigan, and is a common carrier of passengers and property for hire between the city of Detroit and the city of Grand Haven, both of said places and its entire line of railroad being in the State of Michigan, but it does not own and control a line of steamboats plying across Lake Michigan between Grand Haven and Milwaukee, Wisconsin, but there is a line of steamboats engaged in the transportation of persons and property across Lake Michigan between Grand Haven and Milwaukee, from which the respondent receives traffic consigned over its road from Milwaukee, and to which it delivers traffic from its road destined to Milwaukee; that all of said boats are under the control and direction of an independent corporation, organized under the laws of the State of Michigan, by the name of the Grand Haven and Milwaukee Transportation Company; that the management of the business of the last-named company is under the management and control of the same officers as those which manage and control the road and business of the respondent.

" 3. The respondent, for its services as a common carrier for continuous shipment, under a common arrangement, of property from Detroit to its stations on its line of transportation, established and published a schedule of rates and charges,

a tariff of freights which makes on all freights from Philadelphia, New York and Boston, and all other points east of Detroit, consigned over the respondent's road, the same rates and charges for the complainants which are made and charged for the same class of freights to the merchants doing business at the city of Grand Rapids, a copy of which schedule or tariff is hereto annexed and made and deemed a part of this stipulation.

"4. The shipments of freight from Philadelphia, New York, Boston and points east of Detroit, which are delivered to the respondent's road at said city of Detroit and transported by it over its line of railway, pass through the city of Ionia, before reaching the city of Grand Rapids; that it is a shorter distance from Detroit to Ionia than from Detroit to Grand Rapids, and over the same line, in the same direction, the shorter being included in the longer distance.

"5. That the respondent provides, at its own expense, drays, carts and trucks, at the city of Grand Rapids, for the service of transporting merchandise and freight generally, as well as merchandise and freight consigned from Philadelphia, New York, Boston and points east of Detroit between its station at Grand Rapids and the places of business of merchants, traders and other patrons of its road at that place, which service it performs without additional charge to the owner or shipper of property on account thereof; that this service is not furnished to complainants or other merchants, traders and patrons of its road at the city of Ionia; that this service at Grand Rapids has been openly and notoriously rendered for a long period of time, to wit, for twenty-five years and upwards; that its station at the said city of Grand Rapids is within the corporate limits thereof, and is, on an average, one and a quarter miles from the business sections of said city where the traffic of the places tributary to respondent's road originates and terminates, while respondent's station for receiving and discharging freight and property at the city of Ionia is not to exceed an eighth of a mile from the business centre of said city; that at the city of Grand Rapids there are two other railroads, the Michigan Central Railroad and

the Grand Rapids, Lansing and Detroit [Detroit, Lansing and Northern?] Railroad, both of which are immediately and directly in competition with respondent's road for the business of Grand Rapids; that the stations of both of said roads for receiving and discharging freight and property at Grand Rapids are near the business centre of said city, requiring only a short haul to and from their stations, on an average about one quarter of a mile; that respondent did the carting of freight to and from its station at Grand Rapids substantially in the same manner as at present long prior to the time when either said Michigan Central or Grand Rapids, Lansing and Detroit Railroads was constructed to that place.

" 6. That the actual cost of carting or draying freight from respondent's warehouse in the said city of Ionia to the several places in said city of Ionia to and from which traffic has to be hauled is two cents per hundredweight; that the cost of carting or draying freight transported over respondent's line to and from the places of business of the merchants, traders and other patrons of its road at Grand Rapids is two cents per hundredweight.

" 7. That there is but slight competition encountered by the complainants and other persons, firms and corporations engaged in business at the city of Ionia interested in shipping over respondent's road, with similar business at the city of Grand Rapids."

" 9. That complainants have not brought any suit for the recovery of money or damage for which the respondent is alleged to be liable under the provisions of the act to regulate commerce, but have elected to adopt this procedure as the sole means of obtaining relief.

" 10. The city of Grand Rapids has a population of about 70,000. The city of Ionia has a population of about 6000. The freight traffic to and from Grand Rapids by all roads in 1887 amounted to 985,685 tons. The freight traffic to and from Ionia by all roads for the same time amounted to about 55,000 tons.

" 11. Cartage by railway companies in similar manner to that at Grand Rapids is conducted by other railway compa-

nies at exceptional stations in the State of Michigan, and more or less extensively practised by companies in other States at exceptional stations."

On April 26, 1890, the Commission decided the case, which is reported in 3 Int. C. C. 613, and made the following order:

"It is ordered and adjudged that the defendant, the Detroit, Grand Haven and Milwaukee Railway Company, be and it is hereby required, within thirty days from and after the service of a copy of the report and opinion in this proceeding and of this order, to wholly cease and desist from furnishing free cartage of freights at Grand Rapids, in the State of Michigan, whereby rebates from its lawfully published schedule of rates, fares and charges at its station or office in Grand Rapids are given to shippers and consignees, and charges for the transportation over its line of property shipped from eastern points to Grand Rapids, aforesaid, are made less than charges for the transportation over its line of like kinds of property shipped from the same eastern points to Ionia, in the State of Michigan."

On November 2, 1891, the Commission, having been informed that the company would not comply with the order until the judgment of the Commission should be judicially confirmed, filed a petition in the Circuit Court of the United States for the Western District of Michigan, seeking to enforce the order. To this an answer was filed by the company, admitting the facts to be as found by the Commission, and alleging certain additional facts, to support which testimony was adduced.

The Circuit Court on August 7, 1894, entered a decree in the following terms:

"It is hereby ordered, adjudged and decreed that the mandatory writ of injunction of this court do issue to said respondent, the Detroit, Grand Haven and Milwaukee Railway Company, commanding it and its officers and agents to forthwith desist and refrain from affording free cartage at said city of Grand Rapids, unless a like service or its equivalent in value by reduced rates be at the same time afforded at said city of Ionia, and unless the fact that such free cartage, or such

equivalent reduced rate afforded at both points, shall be noted on the established tariffs of freights and charges published as required by law." *Interstate Com. Commission* v. *Detroit &c. Railway*, 57 Fed. Rep. 1005.

From this decree an appeal was taken to the Circuit Court of Appeals for the Sixth Circuit, and that court, on April 14, 1896, entered a decree reversing the decree of the Circuit Court, and directing the dismissal of the Commission's petition. From the decree of the Circuit Court of Appeals an appeal was taken and allowed to this court.

*Mr. Assistant Attorney General Whitney* for appellant.

*Mr. Harrison Geer* for appellee.

*Mr. E. W. Meddaugh* filed a brief for appellee.

MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.

The petition of Stone & Carten, retail merchants at Ionia, addressed to the Interstate Commerce Commission, alleged violations by the railway company of sections 2, 3 and 4 of the interstate commerce act.

The opinion of the Commission sustained the petition avowedly under section 4 of the act, but their order or decree appears to have been based upon both sections 4 and 6. The Circuit Court, as we gather from the opinion of Circuit Judge Taft and the dissenting opinion of District Judge Severens, treated the case as arising under alleged violations of sections 2, 3 and 4. 27 Fed. Rep. 1005.

. The opinion of the Circuit Court of Appeals discusses the case at large. 43 U. S. App. 308.

But the Assistant Attorney General, who appears in this court as counsel of the Interstate Commerce Commission, dispenses, in his elaborate brief, with any consideration of sections 2 and 3, and confines his attention to sections 4 and 6. His language is as follows :

Section 2 of the statute is referred to in the petition of

Stone & Carten, but is not the basis of the decision of either Commission or court. Section 3 also (the undue preference clause) is immaterial at the present stage of the case. Undoubtedly a preference is granted to Grand Rapids over Ionia, but whether the preference is undue or unreasonable within the meaning of the clause in question, was not decided by the Commission. Their decision was based upon other sections of the act. Nor did the Circuit Court base its decision at all upon this provision. Hence we shall submit no argument upon it.

" This leaves for consideration section 4 (the long and short haul clause) and section 6 (the schedule clause). Under section 4 we seek to protect the shippers of Ionia. Under section 6 we seek to protect the humbler and more ignorant shippers of Grand Rapids, that they may not suffer through lack of publicity of the privileges which their larger rivals enjoy."

In our disposition of the case we shall, therefore, consider only the contention now made on behalf of the Commission, namely, that the conduct of the railway company, in furnishing cartage free of charge to the merchants of Grand Rapids, and in not furnishing similar service to the merchants of Ionia, a town thirty-three miles distant, and in failing to publish such free cartage in the schedule published at Grand Rapids, constituted a violation of the provisions of section 4 and section 6 of the Interstate Commerce Act.

One of the findings of the Commission is that the railroad company, as a common carrier for continuous shipment, under a common arrangement, of property from Detroit to its stations on its line of transportation, established and published a schedule of rates and charges, a tariff of freights which makes on all freights from Philadelphia, New York and Boston, and all other points east of Detroit, consigned over the company's road, the same rates and charges for the complainants which are made and charged for the same class of freights to merchants doing business at the city of Grand Rapids. But there is no complaint made of that fact. Indeed, it is conceded by the Commission that so-called " group rates " are not in violation of the long and short haul clause ; and,

therefore, if there were nothing else in the case, except that the company's charges were the same for like kinds of property transported to and from Ionia as those charged to and from Grand Rapids, to and from points outside of the State, no complaint would have been made or entertained.

The sole complaint urged is that the railway company carts goods to and from its station or warehouse at Grand Rapids without charging its customers for such service, while its customers at Ionia are left themselves to bring their goods to and take them from the company's warehouse, and that, in its schedules posted and published at Grand Rapids, there is no notice or statement by the company of the fact that it furnishes such cartage free of charge. These acts are claimed to constitute violations of sections 4 and 6 of the Interstate Commerce Act, 24 Stat. 380, c. 104.

The language of section 4 is as follows:

" That it shall be unlawful for any common carrier subject to the provisions of this act to charge or receive any greater compensation in the aggregate for the transportation of passengers or of like kinds of property, under substantially similar circumstances and conditions, for a shorter than for a longer distance over the same line, in the same direction, the shorter being included within the longer distance; but this shall not be construed as authorizing any common carrier within the terms of this act to charge and receive as great compensation for a shorter as for a longer distance : *Provided however*, That upon application to the Commission appointed under the provisions of this act, such common carrier may, in special cases, after investigation by the Commission, be authorized to charge less for longer than for shorter distances for the transportation of passengers or property ; and the Commission may from time to time prescribe the extent to which such designated common carrier may be relieved from the operation of this section of this act."

The Detroit, Grand Haven and Milwaukee Railway Company is a corporation of the State of Michigan, and its road lies wholly within that State. In addition to its local business it is engaged as a common carrier in interstate commerce, by

arrangements made with connecting railroads. For a period of upwards of twenty-five years before these proceedings this company has openly and notoriously, at its own expense, transferred goods and merchandise to and from its warehouse to the places of business of its patrons in the city of Grand Rapids. The station of the company, though within the limits of the city, is distant on an average one and a quarter miles from the business sections of the city where the traffic of the places tributary to the company's road originates and terminates.

The Compiled Laws of the State of Michigan of 1871 contain act No. 96 of the Laws of 1859, section 3 of which is as follows:

"Every railway company in this State is authorized to make personal delivery of every parcel, package or quantity of goods or property, if the consignee of such property shall reside within two miles of the terminus or railway station or other terminus of the carriage of such property by the main line of such carrier, and they are hereby authorized to employ or own all the means necessary to perform such duty, and to place the men and vehicles therefor under the government and sole regulation of the superintendent or other principal officer of such companies. Such delivery shall be at the house, shop, office or other place of business of the consignee, according to the nature of such property, and where the owner or consignee desires to have the same."

The theory of this enactment evidently is that the duties and powers of a railway company reached no further than the carriage of goods and merchandise, entrusted to it, to its station or warehouse, and that an additional grant of power was needed to enable the company to act as a carrier between its station or warehouse and the house or office of the owner or consignee. However this may be, this record exhibits the case of a Michigan railroad company engaged, for a quarter of a century, in collecting and delivering goods and merchandise at and to the houses and business places of its customers without any charges beyond those made for the railway service.

Undoubtedly, in the case of the Detroit, Grand Haven and Milwaukee Railway Company, during all that period, no just objection could have been made, and no objection was made, to this mode of doing business in the city of Grand Rapids. Nor can it now be pretended that it is unlawful for that company to continue to so receive and deliver goods and merchandise in that city in all cases in which the goods and merchandise are transported by its railway between points within the State. Has the passage of the interstate commerce act rendered it no longer lawful for this company to continue its long-time method of receiving and delivering at Grand Rapids goods and merchandise which form that part of its business which belongs to interstate traffic? Or, rather, is such mode of business an infraction of the fourth section of that act?

It must be conceded that a state railroad corporation, when it voluntarily engages as a common carrier in interstate commerce by making an arrangement for a continuous carriage or shipment of goods and merchandise, is subjected, so far as such traffic is concerned, to the regulations and provisions of the act of Congress. *Cincinnati, N. O. & Texas Pacific Railway* v. *Int. Com. Commission,* 162 U. S. 184. So, likewise, it is settled that when a state statute and a Federal statute operate upon the same subject-matter and prescribe different rules concerning it, and the Federal statute is one within the competency of Congress to enact, the state statute must give way. *Gulf, Colorado &c. Railway* v. *Hefley,* 158 U. S. 98.

Accordingly, the Commission contends that while it may be lawful for the railway company to collect and deliver articles of domestic commerce without making a charge for cartage, and while it is likewise lawful for the company to establish the same rates of freight and charges for like kind of property carried to Ionia and to Grand Rapids, yet it is unlawful for the company to collect and deliver goods and merchandise free from charge for cartage in Grand Rapids, while it only receives and delivers like goods and merchandise at Ionia at its station or warehouse. And the reason given for this contention is that the fourth section of the Interstate

Commerce Act provides that "it shall be unlawful for any common carrier, subject to the provisions of the act, to charge or receive any greater compensation in the aggregate for the transportation of passengers or of like kinds of property, under substantially similar circumstances and conditions, for a shorter than a longer distance over the same line in the same direction, the shorter being included within the longer distance."

Under the facts as found and the concessions as made, the Commission's proposition may be thus stated : There is, conventionally, no difference, as to distance, between Ionia and Grand Rapids, and the same rates and charges for like kinds of property are properly made in the case of both cities. But as there is an average distance of one and one quarter of a mile between the station at Grand Rapids and the warehouses and offices of the shippers and consignees, such average distance must be regarded as part of the railway company's line, if the company furnishes transportation facilities for such distance ; and if it refrains from making any charge for such transportation facilities, and fails to furnish the same facilities at Ionia, this is equivalent to charging and receiving a greater compensation in the aggregate for the transportation of a like kind of property for a shorter than for a longer distance over the same line, in the same direction, the shorter being included within the longer distance.

The Circuit Court of Appeals was of opinion that this proposition is based on a false assumption, namely, that the distance between the company's station and the warehouses of the shippers and consignees is part of the company's railway line, or is made such by the act of the company in furnishing vehicles and men to transport the goods to points throughout the city of Grand Rapids. The view of that court was that the railway transportation ends when the goods reach the terminus or station and are there unshipped, and that anything the company does afterwards, in the way of land transportation, is a new and distinct service, not embraced in the contract for railway carriage. The court, in a learned opinion by District Judge Hammond, enforced this view by a reference to numerous English cases, which hold that the collecting and delivery

of goods is a separate and distinct business from that of railway carriage ; that when railroad companies undertake to do for themselves this separate business, they thereby are subjected to certain statutory regulations and restrictions in respect to such separate business ; and that they cannot avoid such restrictions by making a consolidated charge for the railway and cartage service. 43 U. S. App. 308.

We agree with the Circuit Court of Appeals in thinking that the fourth section of the interstate commerce act has in view only the transportation of passengers and property by rail, and that, when the passengers and property reached and were discharged from the cars at the company's warehouse or station at Grand Rapids, for the same charges as those received for similar service at Ionia, the duties and obligations cast upon this company by the fourth section were fulfilled and satisfied. The subsequent history of the passengers and property, whether carried to their places of abode and of business by their own vehicles or by those furnished by the railway company, would not concern the Interstate Commerce Commission.

It may be that it was open for the Commission to entertain a complaint of the Ionia merchants that such a course of conduct was in conflict with sections 2 and 3 of the act ; but, as we have seen, such questions, if they really arose in the proceedings before the Commission and in the Circuit Court, have been withdrawn from our consideration in this appeal from the decree of the Circuit Court of Appeals.

This disposition of the questions arising under section 4 renders it unnecessary to consider whether, upon the facts disclosed, the services rendered by the railway company at Grand Rapids and Ionia respectively were rendered under " substantially similar circumstances and conditions," and whether that phrase when used in section 4 may not have a broader meaning and a wider reach than when used in section 2 ; and, also, whether if the circumstances and conditions were substantially dissimilar, the railway company could only avail itself of such a situation by an application to the Commission under the terms of the proviso to section 4.

The remaining question is whether, when a railway company furnishes free cartage facilities, even lawfully, that is, in circumstances and conditions that would relieve the company from charges of violating sections 2, 3 and 4, the provisions of section 6 apply. That section is in the following terms:

"That every common carrier subject to the provisions of this act shall print and keep open for public inspection schedules showing the rates and fares and charges for the transportation of passengers and property which any such common carrier has established; and which are in force at the time upon its railroad. The schedules printed as aforesaid by any such common carrier shall plainly state the places upon its railroad between which property and passengers will be carried, and shall contain the classification of freight in force upon such railroad, and shall also state separately the terminal charges, and any rules or regulations which in anywise change, affect or determine any part or the aggregate of such aforesaid rates and fares and charges."

It is not claimed that the railway company has not otherwise complied with the provisions of this section, but the complaint is that there was no statement in its schedules, printed and kept open to public inspection at Grand Rapids, of the privilege of free cartage. It is contended for the Commission that this failure to publish the fact of free cartage in the schedules might result in ignorance by some shippers of the existence of such a privilege, and that thus the knowing ones would enjoy an advantage not possessed by others.

In view of the finding, that this privilege had been openly and notoriously granted to the shippers and consignees at Grand Rapids for a period of twenty-five years, it is difficult to suppose that this practice was not well known to all who would have occasion to rely upon it. It should also be noticed that no complaint is made, in the present case, by any resident of Grand Rapids. It may well be doubted whether cartage, when furnished without charge, comes within the meaning of the phrase "terminal charges," or can be regarded as "a rule or regulation" which in anywise "changes, affects or deter-

mines" any part or the aggregate of the rates, fares and charges.

Judge Cooley, in expressing the opinion of the Commission, well said: "It must be conceded, however, that cartage is not in general a terminal expense, and is not in general assumed by the carrier. The transportation as between the carrier and its patrons ends when the freights are received at the warehouse, and the charge made is for a service which ends there." 3 Int. C. C. 613.

We are informed by an extract from the annual report of the Commission for 1889, 3 Int. C. C. 309, that there are many railroad companies throughout the country which furnish free cartage at some of their stations, but that in no instance do the rate sheets or schedules contain any statement to that effect.

However, in a matter of this kind, much should be left to the judgment of the Commission, and should it direct, by a general order, that railway companies should thereafter regard cartage when furnished free as one of the terminal charges, and include it as such in their schedules, such an order might be regarded as a reasonable exercise of the Commission's powers.

But we are not persuaded, by anything we see in this record, that the defendant company has acted in any intentional disregard of the sixth section.

*The decree of the Circuit Court of Appeals is affirmed.*