STRAUB *v.* MISSOURI PACIFIC RAILROAD COMPANY.

Opinion delivered March 22, 1926.

1. APPEAL AND ERROR—ISSUES NOT RAISED BELOW.—Issues not raised in the trial court either in the pleadings or testimony will not be considered on appeal.

2. CARRIERS—ACCEPTANCE OF SHIPMENT—DESTRUCTION BY FIRE.— Where a railway company, in pursuance of an agreement with a shipper, furnished an empty car for a shipment to be placed on an industrial track, and, after it was loaded, the shipper filled out the receipts and placed same in a box furnished by the railway company and verbally notified the railway company that the car was ready to move, but, before being moved, the car was burned, *held* that there was a completed delivery and acceptance, and the railway company was liable.

3. CARRIERS—CONTRACT LIMITING LIABILITY—INTRASTATE SHIPMENT. —Under Crawford & Moses' Dig., § 843, prohibiting railroads from entering into agreements with shippers abridging, modifying, limiting or abrogating their statutory or common-law duties and liabilities, an agreement between a railroad and a shipper that the railroad should not be liable for loss to the shipper's goods by fire while on an industrial track was void as to goods which were destroyed after being accepted for shipment to a destination within the State.

Appeal from Phillips Circuit Court; *E. D. Robertson,* Judge; reversed.

*Moore, Walker & Moore,* for appellant.

*Thomas B. Pryor* and *Daggett & Daggett,* for appellee.

HUMPHREYS, J.   This is an appeal from a judgment rendered in accordance with a directed verdict in the circuit court of Phillips County dismissing appellant's complaint against appellee.   The purpose of the suit was to recover $1,215, the value of a car load of cottonseed alleged to have been delivered on the 12th day of October, 1923, by appellants to appellee for transportation from the gin of appellants at Helena crossing to the New South Oil Company at Helena, which was destroyed by fire before the car was actually moved by appellee.

Two defenses were interposed to the alleged cause of action by appellee: first, that it had not received the seed for shipment at the time it was destroyed by fire; and, second, that it was exempt from liability on account of fire under a paragraph in the contract which the predecessors of appellants and appellee had entered into when the industrial track was constructed from appellee's main line to the cotton gin of appellants.

Appellee has interposed and argued on appeal two other defenses in support of the judgment, which we understand were not presented as issues by the pleadings or testimony in the trial court.   The new issues contended for in support of the judgment are that appellee was not a public carrier of the cotton seed for appellants but a private carrier, and that the track upon which the alleged shipment was originated was a private and not a public track.   As these issues were not raised below, we cannot consider them on appeal.   *Plummer* v. *Reeves,* 83 Ark. 10; *White* v. *Moffett,* 108 Ark. 490.

Reverting to the issues upon which the case was tried below, according to our understanding of the records, we will first discuss whether or not the undisputed testimony showed that the shipment of seed was delivered by appellee to appellants in accordance with the custom pre-.

vailing between them with reference to shipments from the gin. The trial court ruled that there was a delivery; and, since the ruling was favorable to appellants, it would be unnecessary to discuss this issue on appeal if the court had not erroneously instructed a verdict on another issue. Appellee insists that the ruling of the court in this respect was erroneous because the shipping order was never signed by its agent. The undisputed facts bearing upon the custom with reference to shipments from the gin are as follows:

The parties agreed, on account of the distance of the gin from the depot, that appellee would place a box near the scalehouse at the gin to receive the bills of lading, which appellants were permitted to fill out after placing a car for shipment on the industrial track. In keeping with this agreement, appellee put up the box and furnished appellants with a book containing cross-town billing receipts to make out in duplicate, and place in the box when cars were loaded for shipment. The cross-town billing receipts did not specify that appellants should notify the company in writing that a car was ready for shipment or that it would not be accepted until signed by an agent of appellee. A blank space appeared on the receipt for the engine foreman to sign the hour at which he moved the car, but appellee's witnesses testified that they were signed in duplicate by the engine foreman so that he might use one as reference for the destination of the car, and that the other might be kept as a record by appellee showing the shipment.

The custom in carrying out the agreement was for appellants to order a car; and, after same had been set by appellee and loaded with products from the gin, they would fill out the receipts, place the same in the box, and notify the company orally that the car was ready to move. Nothing else was to be done by appellants in order to obtain the services of appellee.

In this instance, after the car had been set and loaded, appellants notified the engine foreman in person that the car was ready for shipment, and he agreed to

move it that night.   Before it was moved, the gin and car were burned.

Appellants did all that was required of them, according to custom, to constitute a delivery of the car, and the notice to, and the agreement of the engine foreman to move the car that night, constituted an acceptance of it by appellee for shipment.   The receipt neither required written notice nor the signature of an agent of appellee to constitute an acceptance of the car for shipment.   The facts bring the case within the rule announced in the cases of *Railroad Company* v. *Murphy,* 60 Ark. 333; *Pine Bluff & Arkansas River Railroad Co.* v. *McKenzie,* 75 Ark. 100; *Matthews & Hood* v. *St. L. I. M. & S. R. Co.,* 123 Ark. 365.

Appellants contend for a reversal of the judgment upon the alleged ground that the court erred in absolving appellee from liability under the eleventh paragraph of the contract between the predecessors of appellants and appellee, which is as follows:

"The said second party hereby releases and agrees to indemnify and hold the railway company harmless from and against all liability or claim for loss and damage by fire, which may happen upon or be done to or upon the buildings, premises and property of the party of the second part, or to the property of any other persons or corporations, now or hereafter, on the premises of the party of the second part, and whether inside or outside of said buildings, caused by fire, sparks or burning coals from any locomotive when operated upon said track, or by fire otherwise happening howsoever."

This provision in the contract exempting appellee from liability on account of fire is a limitation upon its common-law liability, and is void under § 843 of Crawford & Moses' Digest, the shipment being controlled by the laws of this State.   It was a local shipment.   *Mo. Pac. Rd. Co.* v. *Porter,* 168 Ark. 22.   The contention of appellee is that the contract does not abridge, modify, limit, or abrogate the common-law duty of appellee, and that it is not in conflict with § 843 of the Digest.

We agree with the contention of appellants, for a common carrier cannot change its public character by private contract with shippers to haul freight over its tracks from one industrial track to another industrial track in this State. It is immaterial whether the industrial tracks are owned by the shippers or by the railroad company if, in delivering the shipment, it is necessary to pass over tracks which do belong to the railroad company. As we understand the facts in this case, the shipment was across town on tracks belonging to the railroad company which it had accepted for shipment at a point on an industrial track to be delivered at a point on another industrial track, each of which intersected appellee's tracks.

Since there was a completed delivery of the car of cotton seed for shipment by appellants to appellee, and since paragraph eleven in the contract is void, the judgment dismissing appellants' complaint is reversed, and the cause is remanded with directions to the circuit court to render a judgment in favor of appellants for the value of the seed.

Justices WOOD and SMITH dissent.

SMITH, J., (dissenting). The answer filed by the railroad company specifically pleaded the eleventh paragraph of the contract which is quoted in the majority opinion, and alleges that, by virtue of this paragraph, the railroad-company was to be held harmless for any liability for fire occurring on the industrial track where the car of seed was standing when it burned. If the railroad company can so exempt itself, paragraph eleven accomplishes that purpose, for it expressly provides that the railroad company shall be exempt from liability for damages from fire to property on the track "happening howsoever."

The majority do not set out the agreement for the use of the industrial track, nor shall we do so. It is quite lengthy, and is no doubt in the form used by thousands of shippers over the State whose interests are subserved by using industrial tracks. This is a service which the

railroad company cannot be required to render.   We so
expressly held in the case of *Fairview Coal Co.* v. *Arkansas Central Ry. Co.,* 159 Ark. 649.   The syllabus in that
case reads as follows: "A railroad company which furnishes sufficient facilities for the receipt and delivery of
freight cannot be required to receive freight on a private
.switch."

The railroad company was giving plaintiff a service
which it was not required to give, and this service was
being rendered pursuant to contract.   There was neither
statutory nor common-law duty to give plaintiff service on
the private industrial track.   The rights and obligations
of the parties arose out of a private contract, and the
real question is whether the railroad company may have
the benefit of an exemption for which it contracted as a
condition upon which it would render service upon the
industrial track.

The majority say this clause of the contract exempting the railroad company from liability for fire is void
under § 843, C. & M. Digest, because it imposes a limitation upon the railroad's common-law liability as a common carrier, contrary to that section of the statute.   But
if the contract is valid, the railroad company occupied
the relation of a private carrier while the car was standing or moving on the industrial track, and the authorities
hold that railroads may contract for an exemption from
liability while granting a right which its common-law
or statutory duties as a common carrier do not require
it to perform.   The validity of such an exemption as the
one involved in this case was expressly upheld by this
court in *Clark* v. *St. Louis, I. M. & So. Ry. Co.,* 132 Ark.
257.

The test to determine whether a carrier in a given
case occupies the relation of common carrier or that of
a private carrier is whether the carrier could be required
to perform the service, and, as has been held by this
court, a railroad cannot be required to serve private
industrial tracks whenever an adequate service is otherwise rendered.   A railroad may by contract agree to

serve a shipper on a private industrial track, and, when such a contract is made, the rights and obligations of the parties are dependent on the contract.

In volume 4 Elliott on Railroads (3d ed.), page 463, it is said: "While a railroad company cannot by contract or otherwise change the nature of its public duties or obligations, it may, where it is not under a duty or obligation to the public, contract to perform service in the character of a private carrier of goods or passengers. In other words, where there is a right to refuse to perform the services requested, there is a right to contract for their performance in a different capacity from that which rests upon a railroad company as a public or common carrier."

Here the railroad company had, by private contract, agreed to render service which its duty as a common carrier did not require it to perform, and it had agreed to render this service upon the express condition that its relation and obligation should not be that of a common carrier while rendering the service. The statute cited therefore has no application, because the railroad was not contracting against an obligation resting upon it as a common carrier. On the contrary, the purpose of the contract was to prevent that relation from arising. Such contracts are quite common; the railroads have the right to make them, and, when made, they should be enforced, and, if enforced, the railroad should be accorded the exemption against liability for which it contracted, which is a natural part of the consideration inducing the contract.

The writer and Mr. Justice WOOD therefore respectfully dissent.