## CHARLES J. WEBB & SONS, Inc., v. CENTRAL R. CO. OF NEW JERSEY.

Circuit Court of Appeals, Second Circuit.
December 9, 1929.

No. 59.

Macklin, Brown, Lenahan & Speer, of New York City (Horace L. Cheyney, of New York City, of counsel), for appellant.

Bigham, Englar, Jones & Houston, of New York City (Oscar R. Houston and F. Herbert Prem, both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge. The plaintiff, wishing to send 1,700 bales of skins from Pier 33, Brooklyn, to Camden, N. J., employed a broker to make the necessary arrangements with the defendant. He went to Pier 11, Manhattan, prepared a bill of lading on the defendant's form (the uniform bill of lading), and delivered it to the defendant's agent, together with a delivery order upon the custodian of the skins. Thereupon the defendant, retaining the bill of lading, sent one of its lighters to Pier 33 and laded 280 bales on August 25th. A fire upon an adjoining lighter spread to the defendant's, and damaged the laden bales. This is the basis of the cause of action. The lighter lifted the remaining bales and carried the whole consignment to the defendant's Jersey City terminal, where it was put into cars, whereupon the bill of lading was delivered.

The bill described the broker as consignor, but the blank for the place of shipment was unfilled. Upon it were a number of stamps of different dates, each one apparently being put on as a new parcel was laded on the lighter. It contained the following clauses: Section 1(a): "The carrier or party in possession of any of the property herein described shall be liable as at common law for any * * * damage thereto except as hereinafter provided." The exceptions in part were the act of God, the public enemy, or any act or default of the shipper. Section 4(f): "Property * * * taken from a station, wharf or landing at which there is no regularly appointed freight agent shall be entirely at risk of owner * * * until loaded into cars or vessels, and except in case of carrier's negligence when * * * delivered to such stations, wharves or landings shall be at owner's risk until the cars are attached to * * * locomotive or train or until loaded into * * * vessels." Section 9(a) gave the carrier the benefit of the Harter Act (46 USCA §§ 190–195) and the

limitation statute (46 USCA § 182), so far as concerned "water carriage," from which, however, section 9(f) excluded "lighterage in or across * * * harbors * * * when performed by * * * rail carriers."

The "Lighterage and Terminal Regulations" of the defendant for New York Harbor declared (item No. 1) that "the following is the list of piers or terminals in New York, Brooklyn, Long Island City and Jersey City, at which this company has established stations for the receipt and delivery of freight, carloads or less," these being "New York Harbor points within free lighterage limits." They also declared that "freight for shipment from * * * other piers and bulkheads in New York Harbor within free lighterage limits as defined in this tariff will be lightered or floated by this company * * * to its rail termini at Jersey City. * * * Such freight in carloads will be transported, lighterage free." Pier 33 was later on described as one of those "served" by the Atlantic Terminal.

It is the defendant's position that free lighterage in New York Harbor from such a pier as Pier 33, though this be "served by" an "established station," is a service "accessorial" to rail transportation, during the performance of which it acts, not as a common carrier, but as a bare bailee, who can be charged only when negligent, which was not the case here, further, that the bill of lading was not the contract between the parties at the time of the damage, not having been delivered until the skins were on the cars at Jersey City.

We think that the bill of lading became the contract of the parties when accepted by the defendant without comment or change. It did not, indeed, become a bill of lading stricti juris until signed and delivered, and the defendant was right in refusing to execute it, at least until the skins were all on board the lighter; but its terms must have been understood by the parties to be the measure of their rights and obligations from the moment when any bales were received, and to include lighterage as well as rail carriage. It was the uniform bill of lading of the Commission, drawn under section 1(3) of the Interstate Commerce Act, as amended by section 400 of the Transportation Act (49 USCA § 1(3), which specifically includes lighterage; it several times mentions vessels and wharves, and once lighterage. Unless it did cover that part of the carriage, neither party had provided for it at all; both were left to the implications of the situation, an improbable supposition. Whatever the defendant's belief, the plaintiff could scarcely have assumed that the document which he prepared and in which the carrier acquiesced did not comprise all the service to be rendered.

So we think that the rights of the parties depend upon the language employed, quite independently of whether the law imposed the bill, regardless of their assent, a point not necessary to decide. It is the usual rule that the carrier becomes responsible as such at once upon delivery, unless the shipper has something further to do with the goods. Davey v. Mason, 1 Car. & Marshall, 45; London & L. F. I. Co. v. R., W. & O. R. R., 144 N. Y. 200, 39 N. E. 79, 43 Am. St. Rep. 752; Barron v. Eldredge, 100 Mass. 455, 458, 1 Am. Rep. 126 (semble); Griffin v. Atl. C. L. R. R., 89 S. C. 547, 72 S. E. 463; Schmidt v. C. & N. W. R., 90 Wis. 504, 63 N. W. 1057; Hill Mfg. Co. v. New Orleans, M. & C. R. R., 117 Miss. 548, 78 So. 187; Adair v. Yazoo, etc., R. R. Co., 142 Miss. 345, 107 So. 371. It does not, indeed, follow that this is so when his first service is "accessorial," and it is true that the usual practice in this country, unlike England, is to treat the picking up of goods at the shipper's depot as not part of the common carrier's duty as such, Detroit, etc., R. R. v. I. C. C., 74 F. 803 (C. C. A. 6) affirmed 167 U. S. 633, 17 S. Ct. 986, 42 L. Ed. 306. It would therefore be possible to raise a distinction between delivery at the shipper's depot and one at the carrier's terminal, though nothing turns upon whether a separate charge is made, since the carriage as a whole was for hire.

The language of the bill in our judgment lays any doubts. We pass the proper interpretation of the first clause, "the carrier or party in possession * * * shall be liable as at common law," which may mean, not that he shall be so liable in all cases upon delivery, but only when acting as common carrier. To be sure, some of the exceptions are in that case tautologous, and perhaps the more reasonable meaning is that he shall be always liable, but the inference will not bear much weight. What we do rely upon is section 4(f), which fixes the risk when goods are delivered to a "station, wharf or landing at which there is no regularly appointed freight agent." This clause in the bill of lading promulgated in 1908 read that, when goods were "taken from a station, wharf or landing" where there was no agent, the risk should be on the shipper "until loaded into cars or vessels," and when "delivered on private or other sidings, wharves or landings * * *

704

until cars are attached to * * * trains." In Yazoo & M. V. R. R. Co. v. Nichols, 256 U. S. 540, 41 S. Ct. 549, 65 L. Ed. 1081, the first part of the clause was said to apply to less than carload lots and the second to carload, but each was regarded as conditioned by the absence of a "regularly appointed agent." It might, indeed, be argued that goods not "entirely" at the owner's risk might still be not "entirely" at the carrier's; that is, he might be liable only for negligence. However, the second part of the clause in its present form answers any such contention, since it contrasts the carrier's liability for negligence before loading with another thereafter. That other can be nothing but his liability at common-law, as provided in section 1(a).

A wharf or landing at which there is no regularly appointed agent will in most cases be the shipper's depot, at least for the time being, to which the carrier must send a vessel or car to pick up the goods. That situation is the marine counterpart of shunting a car upon a private siding, a situation several times held to be within the clause. Yazoo & M. V. R. R. v. Nichols, 256 U. S. 540, 41 S. Ct. 549, 65 L. Ed. 1081; Atlantic Ref. Co. v. Penn. R. R., 270 Pa. 415, 113 A. 570; Bers v. Erie R. R., 225 N. Y. 543, 122 N. E. 456. See also Straub v. Mo. Pac. R. R., 170 Ark. 1174, 283 S. W. 36. All such services are "accessorial," if that be defined by the custom of railroads only to accept goods at their terminals, a custom by no means uniform, as this very case well illustrates. It was the purpose of the clause to include all services, whether those of a common carrier or those "accessorial" within the ruling of Interstate Commerce Commission v. Detroit, etc., R. R., 167 U. S. 633, 17 S. Ct. 986, 42 L. Ed. 306.

As to the right of the defendant to exemption from fire losses under the limitation statute (title 46, § 182, U. S. Code [46 US CA § 182], section 9(f) controls. The parties, if they would, might agree to a larger measure of liability than that fixed by law. Whether the uniform bill of lading, if not accepted by the defendant, would of itself override the statute, we need not decide. Had the defendant wished to vary the bill in this respect, some protest was necessary, a protest which would certainly have provoked controversy with the Interstate Commerce Commission. It might not acquiesce in the form and later evade the effect.

Any substantial question of variance disappears as we view the facts. The plaintiff declared upon the bill which it alleged to have been issued before the goods were laden. It only proved the execution of the bill after the cars were loaded, but the bill was accepted as the contract at once, to be formally executed later. Even if this made no more than a contract to issue a bill of lading, like contracts to issue an insurance policy, we decline to hold the variance material in a case where the defendant could not possibly have suffered. Departure is a question of discretion; pleadings are to advise one's opponent, and we try to dispose of causes according to their substances, when the other party has not been caught off his guard. Section 723 of the New York Code of Civil Procedure has been repealed since American Mills Co. v. Hoffman, 275 F. 285 (C. C. A. 2), and section 105 of the Civil Practice Act takes its place. The court's powers are no longer limited to such amendments as do not "substantially change the claim or defense." At least until the new Code is held by the Court of Appeals to be subject to the old restriction, we shall interpret it as leaving the whole matter open to the trial or appellate court. Multiplex Garages v. Walsh, 213 App. Div. 155, 210 N. Y. S. 178. If the defendant wishes, the roll may be corrected, so that the complaint shall conform with the proof. This may be important to fix the extent of the estoppel of the judgment; at least, we cannot see anything more at stake, for it will be observed that we have dealt with the case upon the assumption that Pier 33 was not a part of the Atlantic Terminal, the only point of any importance on which the defendant asserts it has suffered by the departure.

Judgment affirmed.