# CHARLESTON.

McClure and Way, Rec'rs. v. Norfolk & Western
Railway Co.

Submitted February 18, 1919.   Decided February 25, 1919.

Carriers—*Carriage of Goods—Reasonable Limitation of Liability—Application of Limitations.*

The following provision in a bill of lading, viz:

"Property destined to or taken from a station, wharf, or landing at which there is no regularly appointed agent shall be entirely at risk of owner after unloaded from cars or vessels or until loaded into cars or vessels, and when received from or delivered on private or other sidings, wharves, or landings shall be at owner's risk until the cars are attached to and after they are detached from trains," is a reasonable limitation upon the carrier's liability and enforcible. But neither clause of said provision has application, except in cases where it appears the loss of goods shipped occurred at stations, wharves or landings at which the carrier did not maintain a regularly appointed agent.

Error to Circuit Court, Wayne County.

Action by L. E. McClure and F. E. Way, receivers of the Kenova Poplar Manufacturing Company, against the Norfolk & Western Railway Company. Judgment for plaintiffs, and defendant brings error.

*Affirmed.*

*Holt, Duncan & Holt,* for plaintiff in error.
*Livezey & Irons,* for defendants in error.

Williams, Judge:

This writ of error was awarded the Norfolk & Western Railway Company to a judgment recovered by L. E. McClure and F. E. Way, receivers of the Kenova Poplar Manufacturing Company, a corporation, in an action of assumpsit against it to recover the value of two carloads of dressed lumber, which plaintiffs say was delivered to the defendant at Kenova, West Virginia, on the 22nd of July, 1911, to be transported to the City of Detroit, Michigan. There is a private siding leading from defendant's belt line in Kenova into

plaintiffs' manufacturing plant and lumber yards. On the afternoon of said 22nd of July plaintiffs loaded the two cars in the mill and shoved them out on the siding about seventy feet away from the building. Bills of lading were then filled out and sent by a messenger to defendant's depot, which was between a half and three-quarters of a mile distant from the mill, to obtain the signature of defendant's agent. They were signed by the agent about 4:45 o'clock, P. M., of the same day and mailed to plaintiffs who received them in due course. About eleven o'clock of the same evening, fire originated in the mill, from some unknown cause, and destroyed both the mill and the loaded cars standing on plaintiffs' private siding. The lumber was the subject-matter of an interstate shipment and the bills of lading, signed by the railway company's agent, contained certain provisions, stipulations and conditions identical with those contained in a form of bill of lading which was made a part of the published tariff rate schedule then filed with the Interstate Commerce Commission and applicable to interstate shipments originating in West Virginia.

Defendant claims exemption from liability under the last clause of the following provision printed on the back of the shipping contract, and made a part thereof, viz.:

"Property destined to or taken from a station, wharf, or landing at which there is no regularly appointed agent shall be entirely at risk of owner after unloaded from cars or vessels or until loaded into cars or vessels, and when received from or delivered on private or other sidings, wharves, or landings shall be at owner's risk until the cars are attached to and after they are detached from trains."

This provision does not undertake to limit the railway company's liability resulting from its own negligence or the negligence of its agents and servants, and is a reasonable restriction of the carrier's liability. *Berry* v. *W. Va. & P. R. Co.,* 44 W. Va. 538. But plaintiffs contend that it has no application to the present case; and it is admitted by counsel for the respective parties that the issue depends upon the proper interpretation of the last clause of the provision above-quoted, beginning with the words, "and when received."

Defendant contends that, inasmuch as the two cars were on plaintiffs' private siding and had not been attached to a train, its liability as carrier had not attached, that the loaded cars were on the shippers' private siding at their risk, at the time they burned. On the other hand, plaintiffs contend that, Kenova being a station at which defendant maintained a regular freight agent, the provision does not apply, that the phrase, "at which there is no regularly appointed agent," qualifies the last clause, as well as the first clause of the provision; and, when expanded to express fully what, according to grammatical construction, it evidently means, it would read as follows: "and when *property is* received from or delivered on private or other sidings, wharves, or landings, *at which there is no regularly appointed agent,* it shall be at owner's risk until the cars are attached to or after they are are detached from trains." This construction is the logical one, for why should the carrier wish to place a greater limitation on its liability in case of property loaded into cars than in case of property at the same siding before it is loaded? The first clause of the provision clearly does not limit the carrier's liability for property not loaded into cars, whether placed at, or to be received from stations, wharves or landings, without regard to whether they be public or private, except only in case no regularly appointed agent is maintained at such places. There is as much, if not more danger that property, not loaded into cars, would be destroyed or carried away than there is after it has been loaded, and, therefore, no reason for making the distinction contended for by counsel for defendant in the application of the provision. The terms, "private or other sidings," in the last clause necessarily mean private or public sidings, because all railroad sidings fall under one or the other class.

It is clearly established by the evidence that Kenova is a station at which defendant maintains a regularly appointed agent; and the fact that plaintiffs' private siding was from a half to three-quarters of a mile distant from the station house does not contradict the fact that the point at which the cars were destroyed was a station at which defendant maintained an agent, within the meaning of the provision. It

maintained a belt line extending around the town of Kenova, and plaintiffs' manufacturing plant was right near to the belt line, and connected with it by a private siding.

In *Jolly* v. *A. T. & S. F. Ry. Co.*, decided by the District Court of Appeals, 1st District of California, 131 Pac. 1057, the identical provision in the bill of lading here involved was interpreted in the manner now contended for by these plaintiffs. There a carload of goods had been placed upon a public siding, in one of the streets of the City of San Francisco, consigned to George H. Tay Company. The car arrived in the morning and the consignee was notified that it would be set on the siding next to its warehouse in the due course of its business, and was actually so placed sometime after five o'clock in the afternoon, after business hours and without further notice to the consignee. About two hours after the car was placed on the siding it caught fire and damaged the goods, for which the consignee recovered a judgment. On appeal the carrier claimed exemption by reason of said provision in the bill of lading, but the court held that it applied only in case of deliveries at points where no regularly appointed agent was maintained.

These observations call for an affirmance of the judgment, and it will be so ordered.

*Affirmed.*