# YAZOO & MISSISSIPPI VALLEY RAILROAD COMPANY ET AL. v. NICHOLS & COMPANY.

## CERTIORARI TO THE SUPREME COURT OF THE STATE OF MISSISSIPPI.

No. 216.   Argued April 22, 1921.—Decided June 1, 1921.

The Uniform Bill of Lading, approved by the Interstate Commerce Commission June 27, 1908, provides that "Property destined to or taken from a station, wharf, or landing at which there is no regularly appointed agent shall be entirely at risk of owner after unloaded from cars or vessels or until loaded into cars or vessels, and when received from or delivered on private or other sidings, wharves, or landings shall be at owner's risk until the cars are attached to and after they are detached from trains."

Held: (1) That the words "at which there is no regularly appointed agent" apply to both clauses, (p. 544) and (2) that, where goods had been loaded into an outgoing car on a spur used generally by the public, which ran parallel to the main track and connected with it near a station having such an agent, and a bill of lading had issued; the goods were at the carrier's risk while the car remained there waiting to be attached to a train at the carrier's convenience, and the fact that the spur was partly on private land was immaterial.   P. 546.

120 Mississippi, 690, affirmed.

Review of a judgment of the Supreme Court of Mississippi, affirming a judgment against the railroad company in an action brought by the present respondent to recover for the loss of goods shipped on petitioner's railroad.   The facts are stated in the opinion, post, 543.

Mr. Charles N. Burch, with whom Mr. H. D. Minor, Mr. Clinton H. McKay and Mr. W. S. Horton were on the brief, for petitioners:

The first clause refers to a public station, wharf or landing; the second clause refers to private wharves or landings and private sidings, and also to all other sidings,

whether the same be quasi-private or public, or quasi-public, but not including those public side tracks which are immediately adjacent to and serve a public station, and from which freight is unloaded into a public depot or loaded from a public depot into cars on such public sidings. The words "private or other sidings" do not include side tracks, team tracks, or house tracks immediately adjacent to a freight house, which are an integral part of the public freight house facilities. The last mentioned sidings are included in the term "station" in the first clause, as such tracks are as much a part of the station as the station platform. It appears from this record that there is what is called a house track which is immediately parallel with and adjacent to the freight depot and platforms.

At a station where an agent is maintained, the railroad becomes responsible as soon as goods are deposited on the freight house floor or platform, or placed in a car which is on a track which serves the freight house, and a bill of lading is issued.

The first clause means that if a carrier has a public station, wharf or landing, at which it does not maintain a regularly appointed agent, the carrier shall be responsible until inbound goods are unloaded from the cars, and as soon as outbound goods are loaded into cars.

The second clause means that when a party receives or delivers goods, not at a regular freight house, or not at a track serving the regular freight house, but on a private or other siding, then the liability of the carrier as a common carrier shall not begin until (as to outbound freight), the loaded cars are attached to trains, and as to inbound freight the common carrier's liability shall cease when cars are detached from trains.

We insist that where the shipper loads his own freight, as is the case here, and loads it at a public station, wharf, or landing, at which there is no regularly appointed

agent, the liability of the carrier under the first clause attaches as soon as the goods are loaded into a car; and we further insist that when a shipper does not choose to load his freight at a regular public freight house, but, on the other hand, chooses to load his freight at a private wharf or private landing or on any kind of a side track (which does not serve a public freight house), then the liability of the common carrier does not attach until the car containing such goods is attached to a train.

It is not reasonable to expect the station agent to have supervision of and to take care of property in cars on side tracks which are not immediately at a station building, but which are some distance therefrom, and particularly when the side track is located on land not belonging to the railroad company.

The court judicially knows that a large part of the tonnage of the country is loaded into cars which are on tracks quite remote from the place of business of the local station or depot agent. As to such cars the railroad company has a right to insist that its liability as a common carrier shall not begin until such cars are attached to trains. No one is required to load his freight on a private side track or a public side track remote from the regular depot. A shipper has the right if he chooses to deliver his freight at the regular freight depot or to load it into cars placed immediately adjacent to the regular freight depot. If the shipper, for his own convenience, elects to load his cars at some other point, then, certainly the carrier has a right to say that, in such event, the carrier's liability as a common carrier or insurer, shall not begin until the cars are attached to a train—until the cars are in the actual, as distinguished from the constructive possession of the carrier.

The loading in this case was done by the shipper on private property at a gin owned by a third party and a thousand feet distant from the station. Under these

facts we insist that the exemption granted by the last clause applies with full force.

*Mr. John W. Cutrer,* with whom *Mr. Sam C. Cook, Jr.,* and *Mr. John C. Cutrer* were on the brief, for respondent.

MR. JUSTICE BRANDEIS delivered the opinion of the court.

In November, 1917, the Yazoo & Mississippi Valley Railroad Company issued to Nichols & Company a bill of lading for 31 bales of cotton which had been loaded into a box car at Alligator, Mississippi, for shipment to Memphis, Tennessee. Before the loaded car had been attached to any train or engine it was destroyed by fire. The shipper sued in a state court of Mississippi to recover the value of the cotton. The carrier contended that by the terms of the bill of lading it was relieved from liability. The provision relied upon was the second clause of the last-paragraph of section 5 of the Uniform Bill of Lading, approved by the Interstate Commerce Commission June 27, 1908, and duly filed and published as part of the railroad's tariff. The paragraph referred to is this:

"Property destined to or taken from a station, wharf, or landing at which there is no regularly appointed agent shall be entirely at risk of owner after unloaded from cars or vessels or until loaded into cars or vessels, and when received from or delivered on private or other sidings, wharves, or landings shall be at owner's risk until the cars are attached to and after they are detached from trains."

The shippers insisted that the provision did not apply, because at Alligator there was a regularly appointed agent and that the second clause of the paragraph, like the first, was applicable only to stations where there was none. The shippers also contended, on the following facts which

were undisputed, that the place where the car was received was, in effect, a part of the carrier's terminal and not a "private or other " siding within the meaning of the above provision.

The cotton had been loaded from the platform of a gin located at the blind end of a spur which leads from the main line at a point near the depot. The spur which is 1,000 feet long had been built by the railroad many years before at its own expense. About half of it is on the railroad right of way and runs parallel to the main line; the rest is on private land. Under the contract for building the spur the landowner furnished free the right of way over his own land; but the railroad was to have full control over the spur and reserved the right to abandon it at any time and remove the track material. The spur was used generally by the public for loading and unloading carload freight. The only track scale at Alligator was on it—as was also another gin.

Each party requested a directed verdict. A verdict was directed for the shippers. The judgment entered thereon was affirmed by the Supreme Court of Mississippi on the ground that the clause in question applies only to stations at which there is no regularly appointed agent. 120 Mississippi, 690. In the appellate courts of the States in which the question had arisen the decisions were conflicting.[1] For this reason a writ of certiorari was granted. 251 U. S. 550. The only question requiring decision here

---

[1] The clause was held not applicable in *McClure* v. *Norfolk & Western Ry. Co.*, 83 W. Va. 473; *Jolly* v. *Atchison, Topeka & Santa Fe Ry. Co.*, 21 Cal. App. 368. It was applied under different facts in *Chickasaw Cooperage Co.* v. *Yazoo & Mississippi Valley R. R. Co.*, 141 Arkansas, 71; *Standard Combed Thread Co.* v. *Pennsylvania R. R. Co.*, 88 N. J. L. 257; *Bers* v. *Erie R. R. Co.*, 225 N. Y. 543; 163 N. Y. Supp. 114; *Siebert* v. *Erie R. R. Co.*, 163 N. Y. Supp. 111. See also *Bianchi & Sons* v. *Montpelier & Wells River R. R.*, 92 Vermont, 319; *Bainbridge Grocery Co.* v. *Atlantic Coast Line R. R. Co.*, 8 Ga. App. 677.

is whether the court below gave the correct construction to the clause. In our opinion it did.

Whether goods destroyed, lost or damaged while at a railroad station were then in the possession of the carrier as such, so as to subject it to liability in the absence of negligence, had, before the adoption of the Uniform Bill of Lading, been the subject of much litigation. At stations where there is a regularly appointed agent the field for controversy could be narrowed by letting the execution of a bill of lading or receipt evidence delivery to and acceptance by the carrier; and by letting delivery of goods to the consignee be evidenced by surrender of the bill or execution of a consignee's receipt. But at non-agency stations this course is often not feasible. There the field for controversy as to the facts was particularly inviting and the reasons persuasive for limiting the carrier's liability. Local freight trains are often late. Shippers or consignees cannot be expected to attend on their arrival. Less than carload freight awaiting ship-ment must ordinarily be left on the station platform to be picked up by the passing train and lots arriving must be dropped on the platform to be called for by the con-signee. At such stations the situation in respect to car-load freight is not materially different. And this is true whether the car be loaded for shipment on the public siding or on a neighboring private siding, and whether the arriving loaded car be shunted onto a public siding or a private siding. There carload, as well as less than carload, freight, whether outgoing or incoming, must ordinarily be left unguarded for an appreciable time. It is not unreasonable that shippers at such stations should bear the risks naturally attendant upon the use. The reason why an agent is not appointed is that the traffic to and from the station would not justify the expense. The station is established for the convenience of shippers customarily using it. And the paragraph here in question

was apparently designed to shift the risk from the carrier to shipper or consignee of both classes of freight. It does so in the case of less than carload freight by having the carrier's liability begin when the goods are put on board cars and end when they are taken off. It does so in the case of carload freight by limiting liability to the time when the car is attached to or detached from the train. But, at a station where there is a regularly appointed agent, it would be obviously unreasonable to place upon the shipper, after a bill of lading has issued, the risks attendant upon the loaded car remaining on the public siding because it has not yet been convenient for the carrier to start it on its journey. It would likewise be unreasonable to place upon the consignee at such a station the risk attendant upon the arriving car's remaining on the siding before there has been notice to the consignee of arrival and an opportunity to accept delivery. The situation there would be practically the same whether the loaded cars were left standing on a public siding or on a siding to a private industry on the railroad's right of way, as in *Swift & Co.* v. *Hocking Valley Ry. Co.*, 243 U. S. 281, or on a siding, partly on the railroad's right of way and partly on private land, as in *Chicago & Northwestern Ry. Co.* v. *Ochs*, 249 U. S. 416, and *Lake Erie & Western R. R. Co.* v. *State Public Utilities Commission*, 249 U. S. 422, when the siding is, either by state law or by agreement and in fact, a part of the carrier's terminal system.

If we approach the construction of the second clause of the last paragraph of section 5 of the Uniform Bill of Lading in the light of this practical situation all doubt as to its meaning must vanish. It could not have been intended that at stations where there are regularly appointed agents outgoing loaded cars for which bills of lading have issued and which are left standing on a siding solely to await the carrier's convenience are to be at the risk of the shipper. And this is true whether the siding

be a strictly public one, or a semi-public one as in the *Ochs* and *Lake Erie & Western Cases, supra,* and the case at bar; or whether it be a siding privately used but owned by the railroad as in the *Swift Case, supra;* and in such cases the fact that the spur extends over land not part of the carrier's right of way is immaterial. The construction contended for by the railroad, even if not applied to team tracks in the freight yards of a great city, would place all loaded cars arriving elsewhere at the owner's risk from the moment they were detached from a train, although the consignee had not even been notified of their arrival.

It is clear that the immunity conferred by the last paragraph of section 5 does not apply to loaded cars on the spur here involved. Whether the same rule should apply to cars on strictly private industry tracks effectively separated from the terminal and exclusively under private control, like the industry tracks involved in *Bers* v. *Erie R. R. Co.,* 225 N. Y. 543, we have no occasion to determine.

*Affirmed.*