CRANE, HAYES & COMPANY, Plaintiff, *v.* NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY, Defendant.

City Court, City of New York, Bronx County, August —, 1928.

**Carriers — bill of lading — action to recover value of property which was burned while in freight car on private siding — car was sealed and bill of lading issued before fire — defendant carrier is liable.**

The plaintiff loaded a freight car with goods on a private siding and in accordance with the custom the car was sealed and a bill of lading issued by defendant's agent, who acted as agent at two stations, one a quarter of a mile from the siding and one three miles from the siding. Before the car was put into transit and while it was still on the private siding, it was burned, and the present action is to recover the value of the property.

A provision in the bill of lading, exempting the defendant from liability as to property taken from a station, at which there is no regularly appointed freight agent, until after the cars are attached to the locomotive or train, does not apply so as to exempt the defendant in this case, since there was an agent regularly appointed at the station nearby the siding on which the car was placed, and, furthermore, the bill of lading does not exempt cars that are loaded on private sidings.

The defendant has failed to sustain the burden of explaining and rebutting the inference arising from the delivery of the bill of lading, which constitutes both a contract of carriage and a receipt for the goods, and, under the circumstances, it is held that since the car was sealed and a bill of lading issued, the car was in the possession of the defendant which had, from that time, control thereof.

ACTION to recover value of property which was burned while in freight car on private siding.

*Vincent A. O'Connor,* for the plaintiff.

*Charles M. Sheafe, Jr.* [*H. L. Filer* of counsel], for the defendant.

EVANS, J. Plaintiff bought fifty bales of cotton sweepings from the Ray Cotton Company, located at Franklin, Mass.; and directed it to ship the goods to the National Bedding Company, at Wheeling, W. Va. These goods were loaded by the vendor, on its private siding, on a freight car, which had been despatched to it by defendant. The loading was concluded and the car sealed at one-thirty P. M. of September 8, 1926. At two-forty-five P. M. of that day, defendant issued its bill of lading, for the merchandise, in the name of plaintiff as consignor, signed by its freight agent, who acted as such for it at both the Unionville and Franklin, Mass., freight stations, and delivered it to the Ray Cotton Company. The private siding where the loaded car lay, was one-quarter of a mile from the Unionville and three miles from the Franklin freight stations, and lay right along the main tracks, and connected with

them by a switch. Eight o'clock that evening, the merchandise was destroyed by fire, without any one's apparent negligence.

The regular course of dealings for many years between defendant and vendor, as to carload shipments, was for vendor to notify defendant's agent that it had such a consignment ready, whereupon the freight agent would send an empty car to vendor's siding. The vendor would then load the car, seal it, notify the freight agent as to the weighing and sealing, and that it was ready to be moved. The freight agent would then issue a bill of lading. Sometime during the forenoon of the next day defendant would move the loaded car. About ten to twenty carloads a month would be shipped in that way.

The bill of lading (§ 4f) exempts defendant from liability as to property taken from " a station, wharf or landing at which there is no regularly appointed freight agent   *   *   *   until after the cars are attached to   *   *   *   locomotive or train." I do not think this exemption helps defendant, for two reasons. Defendant did have its regularly appointed freight agent at Unionville and Franklin, Mr. L. H. Pendleton; and, *secondly*, there is nothing in the bill of lading which speaks of cars loaded at sidings, public or private.

If the bill of lading contained a provision regarding defendant's liability for loss or damage at sidings, which are private or in the nature of private sidings, the case of *Bers* v. *Erie R. R. Co.* (225 N. Y. 543) would be determinative at bar. If this were a public siding the rule in *Yazoo & Mississippi Valley Railroad Co.* v. *Nichols & Company* (256 U. S. 540) would apply.

The proceedings before the Interstate Commerce Commission, referred to in the briefs of counsel, do not help to determine this cause. The Commission ruled that a certain provision which carriers desired to insert in the uniform bill of lading, regarding their exemption from liability for loss or damage at sidings, was, as attempted to be worded by the carriers, an unreasonable provision. The result of those proceedings was to leave both carrier and shipper to their liabilities and rights at common law. The only question, therefore, is whether, at common law, a delivery to defendant, as carrier, had or had not been made.

Defendant concedes that the burden lies upon it to explain and rebut the inferences, arising from the delivery of the bill of lading, which is both a contract of carriage and receipt for the goods. The only evidence which is helpful to defendant is that the car was loaded by vendor and was burned on its private property before the time had arrived, when defendant usually made its switching movement. Opposed to this stand out the facts (1) that the car was sealed after loading; (2) defendant issued its bill

of lading; (3) that no one but defendant could conduct the switching operation; (4) that there was nothing further for vendor to do, but await defendant's convenience in moving the car from its private siding; and (5) that the vendor, by the sealing of the car, put the goods in the accustomed place where it always made delivery to defendant.

In 10 Corpus Juris (224, 225) the common-law rule is stated: " But if the thing to be done is something which it is the duty of the carrier to do without further act on the part of the shipper, then the liability of the carrier attaches at once. The risk of the carrier, as such, begins on receipt of the goods for immediate transportation, that is, as soon as the delivery is complete so as to place on the carrier the exclusive duty of seeing after their safety."

I can see no other inference to be deduced from the act of issuing the bill of lading for a sealed car, except the appropriation of possession of the goods for the purpose of carriage. Defendant need not have issued the bill of lading, until it was quite ready to assume its responsibility as a carrier. The fact that the sealed car remained on vendor's private land, did not in any way interfere with defendant's ability or right to move it where it would. Its possession of it was, for all practical purposes, just as complete as if it had the car on a public siding. The Ray Cotton Company cannot be said to have been in possession of the goods, for, after the sealing of the car and delivery of the bill of lading, it is questionable whether it could lawfully break the seal, and remove the goods, without permission, either of plaintiff or defendant. (See U. S. Code, tit. 18, § 409; Act of Feb. 13, 1913, chap. 50; 37 U. S. Stat. at Large, 670, § 1, as amd. by 43 id. 793.) The consignor was in Boston. It is said that he could have removed the goods from the car, without incurring any liability to defendant. I think, if consignor did that, he could be held liable, by defendant, for the reasonable value of sending the car, and taking it back, for a purposeless journey. But the question as to whether shipper or consignor could remove the goods from the car, goes beside the question, as to who had possession, actually, at the time of the fire.

The freight car stood on the shipper's land, but it was defendant's property. The sealing of it, at least, evidences that both car and freight were intended to be put into the possession of the carrier. And when the carrier, aware of the loading and sealing of its car, issues its bill of lading therefor, that seems to me to indicate a willingness to accept delivery and possession, then and there, and not sometime, when convenient, tomorrow. And if that be done every day, for 1,000 days, the result is, in reason, no different.

I see no difference between a delivery to a carrier at its principal station for receiving freight and receiving a bill of lading then and there, and delivery to the carrier by loading and sealing a freight car, which the carrier appoints for the purpose, and receiving a bill of lading therefor. Unless a special contract is made to cover the situation, a delivery to the carrier is good if made at the place it designates, be it a freight car, a substation, or main and regular station, or some place on the public highway, where the carrier stands ready to take delivery, and assume its obligations as such. From the course of dealing between defendant and the vendor, who is plaintiff's agent, no one can infer that the customary transaction gave rise to any notion that delivery to defendant, as carrier, was not complete, until the locomotive was coupled to the freight car, ready for the switching movement.

At common law, the placing of the goods by the shipper, at a place at which they are accustomed to be deposited, is a sufficient delivery to charge the carrier, as an insurer. (10 C. J. 222.) Here, the freight car was the customary place of delivery. Having issued its bill of lading, when the goods were sealed in its freight car, defendant must show far more, than the evidence at bar discloses, to destroy the *prima facie* case plaintiff has made out.

It seems to have been the usual practice of defendant to do just what was done in this case. A similar practice was condemned by the Second Circuit Court of Appeals, in *Olivier Straw Goods Corporation* v. *Osaka Shosen Kaisha* (June 11, 1928), in the following language: " However common the practice may be of issuing on-board bills of lading, when the goods are not yet laden, the practice is at best extremely negligent. It not only may mislead merchants as to their actual contract rights but, if recognized as valid, is likely to deprive purchasers who import merchandise, banks financing their operation, and companies insuring the goods against risks, of that certainty as to their rights and obligations whereby truthful conduct and fair business dealing at least tend to promote."

I can perceive no difference, in principle, between the condemned practice of an ocean carrier in issuing an on-board bill of lading before the goods are actually laden, and the practice of a rail carrier, in issuing a bill of lading for a sealed car, on a private siding, before it believes itself to be in actual receipt of the goods. It is a practice misleading to the shipper, consignor, consignee, and others who might be, in some way, interested in the shipment.

Judgment for plaintiff for $1,500.27, with interest from September 8, 1926, and costs.