SMITHWICK *v.* ILLINOIS CENT. R. CO.

(In Banc.   December 8, 1947.)

[32 So.  (2d) 862.   No. 36581.]

Brewer & Brewer, of Clarksdale, for appellant.

Roberson, Luckett & Roberson, of Clarksdale, Jesse. E. Johnson, Jr., and Lucius E. Burch, Jr., both of Memphis, Tenn., and Vernon W. Foster and Charles A. Helsell, both of Chicago, Ill., for appellee.

Argued orally by **Ed C. Brewer**, for appellant, and by **Semmes Luckett**, for appellee.

**Roberds, J.**, delivered the opinion of the court.

Mrs. Smithwick sued appellee Railroad for the value of six bales of cotton destroyed by fire. When she rested

her case the trial judge sustained a motion of defendant to exclude her evidence and render judgment for the Railroad. From this action she appeals.

The Railroad contends that a provision in the bill of lading exempts it from liability under the facts of this case, applying to such facts the rules announced by this Court in Yazoo & M. V. Ry. Co. v. Nichols & Co., 120 Miss. 690, 83 So. 5, 6, Id., 256 U. S. 540, 41 S. Ct. 549, 65 L. Ed. 1081. Appellant takes issue upon that conclusion. She says there is a material difference in the provisions in the two cases, and that the principles announced in the Nichols case do not relieve appellee of liability in this case.

Before copying the two provisions, we will set out the facts of the case at bar.

The cotton was ginned and baled at the cotton gin of Perry-Selden Gin Company located at Hollywood, Mississippi. Hollywood is a small village. The Railroad had no agent at Hollywood at the time in question. Previously there had been a railroad agent at Hollywood, but the agency had been discontinued. The depot structure consisted of what is called a small pagoda, a shelter under which prospective passengers could be protected from rain. One witness for the plaintiff described the community and the depot structure in these words "Oh, there is four or five stores there, post office—just a little shack called a station . . . Possibly eighteen by twenty feet." The railroad track runs generally north and south. On the east side of this, and running parallel therewith, is what is called a house side track, which one witness said was nearly a mile long and which extends south and north of the pagoda, the distance north thereof being about a quarter of a mile. A short distance, perhaps some three hundred feet, south of where this house track merges back into the main line on the north, there extends therefrom a spur track. This spur runs in a northeasterly direction and alongside said Gin and its loading platform and the Gin is located some two hun-

dred and fifty feet east of the house track, and about opposite the point where the house track merges at its north terminus into the main line.

The six bales of cotton in question had been ginned and pressed at the Perry-Selden Gin Company and by it had been loaded about two o'clock on the afternoon of February 21, 1946, into a boxcar standing on the spur track at its loading platform. Bennett, an employee of the Gin Company, and who supervised the loading of the cotton, sealed the car and filled out the bill of lading, there being forty-eight bales in all loaded into this car. Perry, member of the Gin Company, took the bill of lading to Tunica, some five to six miles south of Hollywood, at which station there is a regular railroad agent, which agent signed the bill of lading around 2:30 to 3 o'clock the same afternoon. The cotton was destroyed by fire around one o'clock the next morning. The origin of the fire is not known. It is shown, however, that one bale of cotton of appellant caught fire while being ginned, which bale was discarded and not loaded into this car, but the bales ginned immediately before and after that bale was placed in the car. However, no claim whatever is made that the cause of the fire was any act of commission or omission of the Railroad.

The bill of lading in this case contains this provision: "Property destined to or taken from a station, wharf, or landing at which there is no regularly appointed freight agent shall be entirely at risk of owner after unloaded from cars or vessels or until loaded into cars or vessels, and, except in case of carrier's negligence, when received from or delivered to such stations, wharves, or landings shall be at owner's risk until the cars are attached to and after they are detached from locomotive or train or until loaded into and after unloaded from vessels." Simplified, and as applied to the question here involved, this provision means that property taken from a station at which there is no regularly appointed freight agent is at the owner's risk until loaded into a car and

the car is attached to a locomotive or train.

The provision in the Nichols case reads: " 'Property destined to or taken from a station, wharf or landing at which there is no regularly appointed agent shall be entirely at risk of owner after unloaded from cars or vessels, and when received from or delivered on private or other sidings, wharves or landings shall be at owner's risk until the cars are attached to and after they are detached from trains.' "

That was no action to recover the value of thirty-one bales of cotton loaded into a car on a siding at a gin at Alligator, Mississippi. The Railroad had an agent at Alligator. The Railroad contended that, even though there was an agent at Alligator, it was not liable where the cotton was loaded onto a spur, or siding, until the car become attached to a train.

The plaintiff maintained that since there was an agent at that station, and a bill of lading had been issued, the railroad was liable even though the freight had been loaded onto a siding at that station and the car had not been attached to a train. This Court upheld the latter contention. See Atlantic Coast Line R. Company v. Wilson & Toomer Fertilizer Company, 89 Fla. 224, 104 So. 593. But this Court went further in the Nichols case and discussed the effect had the railroad had no agent at the station, or siding, where loaded, saying: "The entire provision is designed to release carriers from liability at all places where there is no regularly constituted agent until the property has been received into the actual as distinguished from the constructive possession of the carrier . . . at such points. . . . there are many instances where railroad companies in an honest effort to serve the public agree to receive, or take up, and to deliver freight at flag stations and at other points on the main line where there is no regularly appointed agent and sometimes upon sidings where there is no agent. At such places it is reasonable for the carrier to limit its liability for property received or delivered in accord-

ance with what we believe to be the proper construction of the bill of lading here under review.''

The Nichols case went to the Supreme Court of the United States and was affirmed. That Court discussed and announced the rules applicable where there is no regularly appointed agent. It said: ''Whether goods destroyed, lost or damaged while at a railroad station were then in the possession of the carrier as such, so as to subject it to liability in the absence of negligence, had, before the adoption of the Uniform Bill of Lading, been the subject of much litigation. At stations where there is a regularly appointed agent the field for controversy could be narrowed by letting the execution of a bill of lading or receipt evidence delivery to and acceptance by the carrier; and by letting delivery of goods to the consignee be evidenced by surrender of the bill or execution of a consignee's receipt. But at nonagency stations this course is often not feasible. There the field for controversy as to the facts was particularly inviting and the reasons persuasive for limiting the carrier's liability. Local freight trains are often late. Shippers or consignees cannot be expected to attend on their arrival. Less than carload freight awaiting shipment must ordinarily be left on the station platform to be picked up by the passing train and lots arriving must be dropped on the platform to be called for by the consignee. At such stations the situation in respect to carload freight is not materially different. And this is true whether the car be loaded for shipment on the public siding or on a neighboring private siding, and whether the arriving loaded car be shunted onto a public siding or a private siding. There carload, as well as less than carload, freight, whether outgoing or incoming, must ordinarily be left unguarded for an appreciable time. It is not unreasonable that shippers at such stations should bear the risks naturally attendant upon the use. The reason why an agent is not appointed is that the traffic to and from the station would not justify the expense. The station

is established for the convenience of shippers customarily using it. And the paragraph here in question was apparently designed to shift the risk from the carrier to shipper or consignee of both classes of freight. It does so in the case of less than carload freight by having the carrier's liability begin when the goods are put on board cars and end when they are taken off. It does so in the case of carload freight by limiting liability to the time when the car is attached to or detached from the train. But, at a station where there is a regularly appointed agent it would be obviously unreasonable to place upon the shipper, after a bill of lading has issued, the risks attendant upon the loaded car remaining on the public siding because it has not yet been convenient for the carrier to start it on its journey. It would likewise be unreasonable to place upon the consignee at such a station the risk attendant upon the arriving car's remaining on the siding before there has been notice to the consignee of arrival an an opportnity to accept delivery. The situation there would be practically the same whether the loaded cars were left standing on a public siding or on a siding to a private industry on the railroad's right of way, as in Swift & Co. v. Hocking Valley R. Co., 243 U. S. 281, 37 S. Ct. 287, 61 L. Ed. 722, L. R. A. 1917E, 1196, Ann. Cas. 1918A, 955, or on a siding partly on the railroad's right of way and partly on private lands, as in Chicago & N. W. R. Co. v. Ochs, 249 U. S. 416, 39 S. Ct. 343, 63 L. Ed. 679 [P. U. R. 1919D, 498], and Lake Erie & W. R. Co. v. [State] Public Utilities Commission, 249 U. S. 422, 39 S. Ct. 345, 63 L. Ed. 624 [P. U. R. 1919D, 459], when the siding is, either by state law or by agreement and in fact, a part of the carrier's terminal system.'' Yazoo & M. V. R. Co. v. Nichols & Co., 256 U. S. 540, 41 S. Ct. 549, 550, 65 L. Ed. 1081. This case, in our opinion, without the necessity of citing other cases, relieves the carrier of liability in the case at bar.

But, able counsel for appellant say there was in fact an agent at Hollywood; that the agent at Tunica was

also agent at Hollywood. They cite and rely upon Hodges v. Louisiana Railroad & Navigation Company, 180 La. 3, 156 So. 26, 28, in support of that contention. We do not think that case imposes liability under the facts of this case. In the Hodges case the court found and adjudged that the railroad had an agent at Elm Grove, where the cotton was loaded. It held that such agent had existed for many years by agreement and custom; that he did not have to be named as such eo nomine; the Court saying "Plaintiff firm had acted continuously as agent of defendant company for a period of nineteen years. . . .," during which time such agent had discharged the duties of a regularly appointed agent. It also commented upon the fact that such agent, during that time, had protected freight and freight shipments "for the benefit of defendant company, and the only reason for the clause in the bill of lading, invoked by that company as to its nonliability in this case (which was the same as the clause at bar), is the absence of an agent at the station to look after its interests."

The functions of an agent are more than merely signing bills of lading. He often supervises the loading of freight. He is on the ground to look after and protect it. It would often happen that his presence on the ground would protect the carrier from loss. In the case at bar, the agent resided at Tunica, some five to six miles away. He was not at Hollywood to watch over freight after being loaded and before removal from that point. The reason underlying the condition fails. The agent at Tunica was not the agent at Hollywood within the meaning of the bill of lading provision under consideration.

It will be noted that Section 4(f) applies only where freight is received from or delivered to a station. Appellant contends that this cotton was not loaded at a station; that the spur track was not at, or a part of, the station at Hollywood within the meaning of that provision. It appears that the spur track was a distance of some thirteen to fourteen hundred feet from the pagoda

and some two hundred and fifty feet east of the house track and extended from the house track some three to three hundred and fifty feet to the gin. All freight loaded onto the spur track necessarily had to be switched back onto the house track, and thence onto the main line of the railroad at Hollywood. The bill of lading receipted for the property as being received at Hollywood. Appellant cites and relies upon Crane, Hayes & Company v. New York, N. H. & H. R. Company, 132 Misc. 682, 230 N. Y. S. 427, 428. That case, in our view, does not decide the question now under consideration, that is, whether the spur track was a part of Hollywood station. It held the railroad liable under Section 4(f) where the freight was loaded into a car on a private siding located a quarter of a mile from Unionville and three miles from Franklin freight stations, at both of which stations the railroad had its "regularly appointed freight agent." Liability was grounded on the existence of an agent, and absence from the bill of lading of any provision exempting liability when loaded at a private siding. However, it will be noted that the siding in that case was a quarter of a mile from the station.

In the Nichols case, the siding was about one thousand and fifty feet from the station. Station includes the station yards and all of the tracks within the yards used for transporting freight from the station. Hall v. Chicago, B. & N. R. Company, 46 Minn. 439, 49 N. W. 239; Morrisette v. Canadian Pac. R. Company, 76 Vt. 267, 56 A. 1102. In McClure v. Norfolk & W. Ry. Company, 83 W. Va. 473, 98 S. E. 514, 516, the private siding upon which the freight was loaded was a distance of one-half to three-quarters of a mile from the station house, yet this siding was held to be a part of the station. We are of the opinion that the spur track in the case at bar was a part of the station of Hollywood within the meaning of the provision under consideration.

As stated, the cotton burned about one o'clock in the morning after being loaded into the car around two

o'clock the previous afternoon. Counsel, by agreement, stipulated that a local freight train (and the only local freight train) passed Hollywood going north, the destined direction of the cotton, about 8:15 P. M., after the cotton was loaded and before it burned, which train did not pick up this car. The argument is made here that the failure of this train to pick up the car imposes liability on the Railroad. It is not shown why this train did not pick up the car. However, this action is not grounded upon negligence. It is based alone on common law liability as an insurer of accepted and non-delivered frieght. Appellant, in her brief, expressly states that the question of negligence is not involved. In addition to this, even though negligence because of such delay had been charged, this Court has aligned itself with those cases holding that where a carrier negligently delays the transportation of freight, and it is destroyed by fire, for which the carrier is in no way responsible, the fire, and not the negligence, is the proximate cause of the injury. Yazoo & M. V. Ry. Company v. Millsaps, 76 Miss. 855, 25 So. 672, 71 Am. St. Rep. 543.

Affirmed.